UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-61323-CIV-ALTONAGA/Brown

**SUNTRUST BANK**, a Georgia corporation,

Plaintiff,

vs.

**JAMES HAMWAY**, an individual;
**CAROLE HAMWAY**, an individual;
**ALBERT HAMWAY**, an individual;
**MARGARET D. BALZER**, an individual;
and **HAMWAY FLOORING, INC.**,
a Florida corporation,

Defendants.
_____/

## ORDER

This cause is before the Court on Motion to Dismiss by Defendants, Carole Hamway ("Carole"), Albert Hamway ("Albert"), and Margaret Balzer ("Balzer") [D.E. 35], filed on November 10, 2009. The Court has carefully considered the parties' written submissions and applicable law.

### I. BACKGROUND[1]

This case involves the default of a loan and alleged fraudulent transfers. Between 2005 and 2007, Defendant, Hamway Flooring, Inc. ("Hamway Flooring"), and Plaintiff, SunTrust Bank ("SunTrust"), entered into a series of loans, promissory notes, advances, consolidations, and various revolving credit accounts. (*See* Plaintiff's First Amended Complaint ("*Am. Compl.*") [D.E. 31] at ¶¶ 12-21). As part of the transactions, Defendant, James Hamway ("James"), the sole officer and

---

[1] All allegations of the Amended Complaint are taken as true.

Case No. 09-61323-CIV-ALTONAGA/Brown

director of Hamway Flooring, executed a personal guaranty of Hamway Flooring's debt to SunTrust. (*See id.* at ¶¶ 18, 22). James's wife, Carole, also signed the guaranty. (*See id.*).

On August 31, 2007, the operative loan matured, and Hamway Flooring failed to repay the loan in full. (*See id.* at ¶ 23). Between August 31, 2007 and March 30, 2009, SunTrust, Hamway Flooring, and James and Carole Hamway entered into four written Forbearance Agreements whereby SunTrust agreed to forbear from exercising its rights under the Loan Documents and extended the maturity date of the loan to June 30, 2009. (*See id.*). Hamway Flooring defaulted on its obligations and did not repay the loan on June 30, 2009. (*See id.* at ¶ 24). Pursuant to a Collateral Surrender Agreement, Hamway Flooring surrendered collateral to SunTrust, which then sold the collateral at public auction. (*See id.*).

Consistent with the Loan Agreement between SunTrust and Hamway Flooring, advances from SunTrust under the Note were governed by a Borrowing Base, which was defined as an amount equal to the sum of (a) 75 percent of Eligible Accounts Receivable, and (b) 50 percent of Eligible Inventory capped at $2,000,000.00 (*See id.* at ¶ 26). Advances were not permitted if, after the advance, the outstanding balance of the Note would exceed the Borrowing Base. (*See id.* at ¶ 27). If at any time the outstanding balance of the Note exceeded the Borrowing Base, Hamway Flooring was required to pay the excess amount within three days after demand from SunTrust. (*See id.*). Hamway Flooring was required to deliver a Borrowing Base Certificate after the end of each month to SunTrust. (*See id.* at ¶ 28). The Certificate was to set forth the amount of Eligible Accounts and the Borrowing Base as of the last day of the prior month. (*See id.*).

The Loan Agreement included the following provisions regarding Eligible Accounts:

"Eligible Accounts" shall mean, at any time, any domestic account receivable of Borrower which (a) is bona fide, valid and legally enforceable obligation of the account debtor in respect thereof, which is unconditionally owing by such account debtor and is not subject to sale of consignment, sale of return, or any other similar arrangement; (b) is subject to a perfected first priority security interest in favor of The Bank and is free and clear of all liens, security interests and encumbrances; (c) is not subject to any defense, dispute, offset, counterclaim or other claim by the account debtor; (d) is payable by an account debtor which is a solvent, going concern that is unaffiliated with Borrower; (e) is not more than ninety (90) days old from the original due date of the relevant invoice; (f) is not subject to any "bill and hold" or other similar arrangement; (g) is not subject to the 25% cross-age rule (i.e. if 25% of the balance of a particular receivable is ninety (90) days past due from the date of the invoice, this account's entire balance will be eliminated from eligibility); and (h) is acceptable to The Bank in its sole discretion. (emphasis added).

(*Id*. at ¶ 29).

In April 2009, James Hamway, acting as President of Hamway Flooring, executed and submitted the Certificate for March 31, 2009. (*See id*. at ¶ 30). At the time, the outstanding balance of the Note was $2,600,000.00. (*See id*. at ¶ 31). In the Certificate, James represented that Hamway Flooring had total accounts receivable of $2,566,911.84, of which $2,399,488.75 were Eligible Accounts. (*See id*.). This representation was false because James had included as Eligible Accounts some which were subject to liens, accounts that were more than 90 days old, and accounts that were 25 percent cross-aged. (*See id*. at ¶ 32). Based on the sum of 75 percent of the Eligible Accounts ($1,799,616.56) and 50 percent of the Eligible Inventory ($821,875.52), as of March 31, 2009, James calculated the Borrowing Base as $2,621,492.08, which exceeded the outstanding balance of the Note. (*See id*. at ¶ 33).

Following the August 5, 2009 public auction of the Collateral, SunTrust engaged the services of Focus Management Group ("Focus") to facilitate the liquidation of the Collateral. (*See id*. at ¶ 34). Upon reviewing the books of Hamway Flooring, Focus discovered that James had materially

misrepresented the amounts of Eligible Accounts in the March 31, 2009 Certificate and in other Certificates. (*See id*. at ¶ 35). The March 31, 2009 Certificate included $945,808.95 of accounts receivable that were subject to liens, $160,187.72 that were over 90 days old, and $283,819.05 that were 25 percent cross-aged, none of which were Eligible Accounts. (*See id*.).

The actual amount of Eligible Accounts on March 31, 2009 was $1,009,673.04. (*See id*. at ¶ 36). Based on the sum of 75% of the actual Eligible Accounts ($757,254.78) and 50% of the Eligible Inventory ($821,875.52), the Borrowing Base was only $1,579,130.29, well below the outstanding balance of the Note. (*See id*.). Had SunTrust known the actual amounts of Eligible Accounts as of March 31, 2009, it would not have permitted further advances under the Note and would have required Hamway Flooring to repay the excess amount of $1,020,869.71. (*See id*. at ¶ 37).

On March 27, 2009, James caused Hamway Flooring to transfer two vehicles it owned free and clear to insiders. (*See id*. at ¶ 39). Specifically, it transferred a 2005 Dodge Ram 1500 Quad (the "Dodge Ram") to Albert for no consideration, and a 2001 BMW 740IL (the "BMW") to Balzer for no consideration. (*See id*.). As of the date of the transfers, the Kelley Blue Book retail value of a 2005 Dodge Ram 1500 Quad in good condition was $16,385.00, and the Kelley Blue Book retail value of a 2001 BMW 740IL in good condition was $16,760.00. (*See id*. at ¶ 40). Balzer is James's mother-in-law and Carole's mother. (*See id*. at ¶ 41). Albert Hamway is James's father and former owner and employee of Hamway Flooring. (*See id*. at ¶ 42). At the time of the transfers to Albert and Balzer, SunTrust was a Hamway Flooring creditor. (*See id*. at ¶ 43).

Between December 2006 and June 2007, James and Carole made a number of valuable

improvements to their homestead property located in Lighthouse Point, Florida, including the installation of marble walls and floors in many rooms in the home, a custom mahogany stairwell, and a swimming pool.  (*See id*. at ¶¶ 44-45).  To pay for the improvements, James withdrew $180,726.88 from Hamway Flooring's business account, in which SunTrust had a security interest. (*See id*. at ¶ 46).  James referred to the job as "WCI Caseras" on Hamway Flooring's books.  (*See id*.).  James never repaid the $180,726.88 to Hamway Flooring.  (*See id*. at ¶ 47).  James created false invoices purporting to bill clients for the work done in order to remove the cost of the improvements from Hamway Flooring's books by writing off the cost of the improvements as a business expense of Hamway Flooring. (*See id*. at ¶ 48).

James also entered into a barter arrangement with Robert Allard Pools whereby Robert Allard Pools agreed to install the pool in return for James's promise to provide Robert Allard Pools with Hamway Flooring's services and materials.  (*See id*. at ¶ 49).  Between June 2007 and April 2009, James caused Hamway Flooring to provide services and materials at no cost to Robert Allard Pools. (*See id*. at ¶ 50).  Hamway Flooring records indicate Hamway Flooring spent a total of $56,797.99 on services and materials provided to Robert Allard Pools, all of which were either written off by Hamway Flooring or billed to Robert Allard Pools at $0.00.  (*See id*.).  James never repaid the $56,797.99 to Hamway Flooring.  (*See id*. at ¶ 51).  At the time the construction of the improvements and the pool commenced, Hamway Flooring was indebted to SunTrust for principal of up to $7,000,000.00.  (*See id*. at ¶ 52).  The current assessed value of the homestead property is $2,108,030.00.  (*See id*. at ¶ 53).

SunTrust's First Amended Complaint against Hamway Flooring, the Hamways, and Balzer,

Case No. 09-61323-CIV-ALTONAGA/Brown

states nine counts: Count I is for breach of Note against Hamway Flooring; Count II is for breach of

guaranty on Note against James and Carole; Count III is for fraud against James; Counts IV through

VII are for fraudulent transfers against Balzer and Albert; Count VIII is for conspiracy to defraud

against James, Balzer, and Albert; and Count IX seeks the imposition of an equitable lien against the

homestead property of James and Carole.  Carole, Albert and Balzer move to dismiss the Amended

Complaint.  While Defendants seek a dismissal of the Amended Complaint as a whole, their Motion

does not present any argument as to Counts III and IX.  The Motion only addresses Counts I and II

(failure to state a claim), and  Counts IV through VIII (lack of a jurisdictional basis).

## II.  LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted

as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937,

1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Although this pleading

standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-

defendant-unlawfully-harmed-me accusation."  *Id.* (quoting *Twombly*, 550 U.S. at 555)).  Pleadings

must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action will not do."  *Twombly*, 550 U.S. at 555.  Indeed, "only a complaint that states a plausible

claim for relief survives a motion to dismiss."  *Iqbal*, 129 S. Ct. at 1950 (citing *Twombly*, 550 U.S.

at 556).  To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

at 1949 (citing *Twombly*, 550 U.S. at 556).  "The mere possibility the defendant acted unlawfully is

insufficient to survive a motion to dismiss."  *Sinaltrainal v. Coca-Cola Co.*, No. 06-15851, 2009 WL

Case No. 09-61323-CIV-ALTONAGA/Brown

2431463, at *4 (11th Cir. Aug. 11, 2009) (citing *Iqbal*, 129 S. Ct. at 1949).

When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). But pleadings that "are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 129 S. Ct. at 1950; *see also Sinaltrainal*, 2009 WL 2431463, at *3 ("'[U]nwarranted deductions of fact' in a complaint are not admitted as true for purposes of testing the sufficiency of the allegations."). A court's analysis of a Rule 12(b)(6) motion "is limited primarily to the face of the complaint and the attachments thereto." *Brooks*, 116 F.3d at 1368.

### III. ANALYSIS

#### A. Florida Statute § 201.08

Defendants first argue that Counts I and II must be dismissed on the ground that the Note is unenforceable because SunTrust did not pay documentary stamp taxes pursuant to Section 201.08, Florida Statutes. Section 201.08 provides, in part:

> Failure to pay the tax shall not affect the lien for any such future advance given by s. 697.04, but any person who fails or refuses to pay such tax due by him or her is guilty of a misdemeanor of the first degree. The mortgage, trust deed, or other instrument shall not be enforceable in any court of this state as to any such advance unless and until the tax due thereon upon each advance that may have been made thereunder has been paid.

Fla. Stat. § 201.08(1)(b). Interpreting the statute, one Florida appellate court has reasoned,

> Section 201.08(1), Florida Statute (1997), clearly states that in an action to enforce a promissory note the plaintiff must establish, as a condition precedent to pursuing the action, that the taxes due on the note have been paid. The prohibition

Case No. 09-61323-CIV-ALTONAGA/Brown

> against actions to enforce promissory notes until the required documentary taxes have
> been paid applies to "any court" including ours.  The obvious purpose of this statute
> is to ensure payment of statutorily mandated taxes.  "This statutory provision is
> concerned primarily with enforcement of the taxing statutes and collecting monies
> due the state for documentary stamps on designated instruments."  *Silber*, 526 So. 2d
> at 977.  To this end, section 201.08(1) constitutes an injunction prohibiting courts
> from enforcing rights created by instruments upon which required taxes have not
> been paid.  Accordingly, since no evidence was submitted at trial to prove that Mr.
> Somma had paid the taxes due on the note, this lawsuit should have been dismissed.

*Somma v. Metra Elecs. Corp.*, 727 So. 2d 302, 304 (Fla. 5th DCA 1999).  The court further

explained,

> [P]romissory notes for which documentary taxes have not been paid are, as a matter
> of law, unenforceable by any Florida court. In an action to enforce such a note, once
> the court discovers that the documentary taxes have not been paid, the court must
> dismiss the action without prejudice, or upon proper motion abate the action for a
> time sufficient to enable the plaintiff to purchase documentary stamps and affix them
> to the note.

*Id*. at 305.

Defendants here assert "[t]here is no allegation that the requisite documentary stamp tax due

the State of Florida has been paid, and the promissory notes attached to the Complaint do not reflect

the payments of the required documentary stamp tax."  (Defendants' Motion to Dismiss

("*Defendants' Mot.*") [D.E. 35] at 3).  But SunTrust "specifically alleges that 'all conditions

precedent to the institution and maintenance of this action have been performed, waived or

excused.'" (Plaintiff's Response ("*Plaintiff's Resp.*") [D.E. 39] at 10).  Furthermore, the Note

attached to the Amended Complaint reflects that "it is a renewal and increase of the October 14,

2004 promissory note in the principal amount of $3,5000,000.00, upon which documentary stamp

taxes were previously paid and . . . no documentary stamp tax is due because the statutory maximum

was paid on the October 14, 2004 note." (*Id*. at 11).

Still unwilling to concede the sufficiency of the pleading, Defendants argue the failure to pay

tax stamps is jurisdictional in nature rather than a condition precedent, and therefore cannot be

averred generally.  (*See* Defendants' Reply Memorandum ("*Defendants' Reply*") [D.E. 40] at 2).

Assuming Defendants are correct, SunTrust has done more than aver generally that the tax stamps

were paid.  The Note attached to the Amended Complaint specifically reflects payment of the tax

stamps, and therefore dismissal on this basis is not warranted.  *See* Fed. R. Civ. P. 10(c) ("A copy

of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

In the case relied most heavily upon by Defendants, the court stated, "[t]he dispositive issue

raised in this action to enforce a promissory note is whether the trial court was required to dismiss

the action once it was established at trial that the plaintiff had failed to pay the taxes due on the

note." *Somma*, 727 So.2d at 302.  The procedural posture of this case is entirely different from

*Somma*.  In *Somma*, the case had proceeded to trial, and the factual record had been thoroughly

established.  Here, the issue is the sufficiency of the pleading, and discovery is not complete.  It has

not been "established," as it was in *Somma*, that the tax stamps were not paid.  Instead, SunTrust has

made a specific allegation that the tax stamps were paid, and this is accepted as true.  The requested

dismissal of Counts I and II is denied.[2]

## B.      Equal Credit Opportunity Act

Defendants next argue Count II fails to state a claim for breach of the guaranty because the

---

[2] The parties also dispute whether section 201.08(1)(b) is even applicable to documentary tax stamps on promissory notes, and argue as to the correct interpretation of *Glenn Wright Homes (Delray) LLC v. Lowy*, 18 So. 3d 693 , 606 (Fla. 4th DCA 2009), which is critical of *Somma* for misreading the statute.  Because the allegation of payment is sufficient to ward off dismissal, the parties' dispute concerning *Glenn Wright Homes* is not addressed.

Case No. 09-61323-CIV-ALTONAGA/Brown

guaranty is void under the Equal Credit Opportunity Act ("ECOA" or the "Act"). Defendants claim

the fact that both James and Carole signed the guaranty renders it void under the Act. The ECOA

provides that a creditor may not require a spouse to guarantee a loan if the applicant independently

qualifies for credit. Regulation B, interpreting the ECOA, states:

> Rule for qualified applicant. Except as provided in this paragraph, a creditor shall not require the signature of an applicant's spouse or other person, other than a joint applicant, on any credit instrument if the applicant qualifies under the creditor's standards of creditworthiness for the amount and terms of the credit requested. A creditor shall not deem the submission of a joint financial statement or other evidence of jointly held assets as an application for joint credit.

12 C.F.R. § 202.7(d)(1).

Defendants cite several cases in support of their contention that the presence of both spouses'

signatures voids the guaranty. In *Silverman v. Eastrich Multiple Investor Fund, L.P.*, 51 F.3d 28,

33 (3d Cir. 1995), the appellate court reversed the dismissal of plaintiff's claim that a creditor

violated the ECOA by requiring her signature on a loan guaranty for her spouse. *Id*. at 29. Plaintiff's

husband was a partner in a general partnership that acquired a loan from a bank. *Id*. at 29-30. The

bank required all partners within the partnership to sign the guaranty agreement, and required

plaintiff, a partner's wife, to sign as well. *Id*. at 30. The partnership became insolvent, and the

holder of the guaranty attempted to collect. *Id*. Plaintiff filed suit, alleging, among other things, a

violation of the ECOA on the ground that she should not have been required to sign the guaranty

when she was not a partner in the partnership. *Id*. Noting that an ECOA violation may be used as

a defense to an obligation under a guaranty, the court explained:

> If Atlantic did in fact violate the ECOA, then plaintiff may have a valid defense and obtain relief from her obligations under the Guaranty. We note however that if plaintiff's guaranty is voided, this would not void the underlying debt obligation nor

> any other guaranties. . . . The district court ruled in favor of defendant as a matter of law and did not make a factual determination that Atlantic required her signature solely based upon her marital relationship with a borrower. Although the district court noted plaintiff was not a partner in Hunt's Pier, Atlantic may have justifiably required her to guaranty the loan if it determined her husband was not independently creditworthy.

*Id*. at 33 (internal citation and parenthetical omitted).

*Silverman* does not, as Defendants suggest, stand for the proposition that simply because a spouse signed a guaranty, the guaranty is void. Rather, *Silverman* stands for the proposition that if the creditor required the spouse's signature solely because he or she was married to the applicant, the guaranty may be unenforceable as to the signing spouse. That holding does not warrant dismissal of SunTrust's claims against Defendants. First, while Carole did sign the guaranty, there is no allegation that SunTrust required her to sign. Moreover, there is no allegation concerning James's qualifications as an applicant. There is simply no allegation from which it can be ascertained that SunTrust did or did not violate the ECOA as to Carole.

Defendants also cite *Integra Bank/Pittsburgh v. Freeman*, 839 F. Supp. 326 (E.D. Pa. 1993), to support their argument that the guaranty is void because it violates the ECOA. In *Integra*, a bank required the principals of a corporation to sign a personal guaranty to secure a loan, and required the wives of the principals to sign as well. *Id*. at 328. The bank sued to enforce the guaranty, and the defendant/debtors argued against summary judgment in favor of the bank on the basis of an ECOA violation. *Id*. Explaining that the ECOA's purpose is to eradicate credit discrimination against women, the court quoted a pertinent portion of the regulation: "'a creditor shall not require the signature of an applicant's spouse or any other person, other than a joint applicant, on any credit instrument if the applicant qualifies under the creditor's standards of creditworthiness for the amount

11

and terms of the credit requested.'" *Id*. (quoting 12 C.F.R. § 202.7(d)(1)).  In determining that an

ECOA violation could serve as a defense against enforcement of a guaranty, the court, like the court

in *Silverman*, held that "while an ECOA violation should not void the underlying credit transaction

an offending creditor should not be permitted to look for payment to parties who, but for the ECOA

violation, would not have incurred personal liability on the underlying debt in the first instance."

*Id*. at 329.  Ultimately, the court determined that if the wife could prove the creditor impermissibly

required her to sign the guaranty, she would have no liability under the guaranty.  *Id*. at 331.  Her

husband, however, would remain liable.  *Id*.

> *Integra*, like *Silverman*, does not absolve the applicant debtor from liability under a guaranty

due to an ECOA violation; only the spouse is released from liability.  Moreover *Integra,* like

*Silverman*, requires a finding that the creditor has impermissibly required the signature of the spouse,

acknowledging that circumstances exist under which a spouse's signature may be required.  In this

case, as noted, the pleading is silent as to whether James was a qualified applicant such that Carole's

signature should not have been required.  Consequently, dismissal of the breach of guaranty count

is not appropriate.

### C.  Jurisdiction Over Counts IV Through IX

> Finally, Defendants argue the Court does not have jurisdiction over Counts IV through IX

because they do not independently meet the dollar amounts for diversity jurisdiction under 28 U.S.C.

§ 1332, and because they do not arise from a common nucleus of operative facts as the claims that

do satisfy the dollar amount.  Counts IV through IX involve alleged fraudulent transfers from

Hamway Flooring to certain individuals.  SunTrust alleges the transfers were made in an attempt to

Case No. 09-61323-CIV-ALTONAGA/Brown

keep it from collecting on the debt owed by Hamway Flooring.  Assuming the fraudulent transfer

claims do not independently meet the dollar requirement of section 1332, the claims are nevertheless

sufficiently related to claims that do to satisfy supplemental jurisdiction under 28 U.S.C. § 1367.

> Pursuant to 28 U.S.C. § 1367,
>
> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a).  The Eleventh Circuit has held that sufficient relatedness under section 1367

will be found where claims "involve the same witnesses, presentation of the same evidence,  and

determination of the same, or very similar, facts."  *Palmer v. Hospital Auth. of Randolph County*,

22 F.3d 1559, 1563-1564 (11th Cir. 1994).  The court explained, "[w]hile all the elements of the

federal and state claims are certainly not identical, and in some cases are quite different, each claim

involves the same facts, occurrences, witnesses, and evidence."  *Id*. at 1566.

In Count III of the Amended Complaint, SunTrust alleges James fraudulently misrepresented

the amount of Hamway Flooring's assets in the form of accounts receivable in order to induce

SunTrust to loan Hamway Flooring more than the loan documents permitted.  SunTrust alleges it

incurred damages in the amount of $2,593,657.95[3] – the amount due under the Note – because of

James's alleged fraudulent misrepresentation.  Count III clearly satisfies the jurisdictional dollar

amount.

---

[3] SunTrust also claims it is owed accrued interest on the Note, attorney's fees and costs.

Case No. 09-61323-CIV-ALTONAGA/Brown

In Counts IV through VII, SunTrust alleges James transferred two vehicles belonging to Hamway Flooring to Albert and Balzer. According to SunTrust, the transfers were made in order to avoid the attachment of those vehicles by SunTrust to aid in paying the debt owed to SunTrust. In Count VIII, SunTrust alleges that James, Albert, and Balzer all conspired to defraud SunTrust by means of fraudulently transferring the assets of Hamway Flooring to various individuals to prevent SunTrust from collecting on the debt owed by Hamway Flooring and the Hamways. Count VIII clearly encompasses Counts IV through VII.

SunTrust's theory in this case is that James deliberately misrepresented the assets of Hamway Flooring in order to induce SunTrust to provide Hamway Flooring with a substantial loan. SunTrust alleges that after Hamway Flooring defaulted on the loan, James conspired with others to avoid repayment of the loan by fraudulently transferring assets of Hamway Flooring to certain individuals. While the fraudulent transfer claims include Defendants other than James – *i.e.*, Albert and Balzer – those claims nonetheless concern James and his intention to avoid his obligations to SunTrust under the loan. Accordingly, Counts IV through VII are part of the same case or controversy as Counts III and VIII, and supplemental jurisdiction is satisfied under section 1367(a).

### IV. CONCLUSION

In light of the foregoing, it is hereby

**ORDERED AND ADJUDGED** that the Motion to Dismiss **[D.E. 35]** is **DENIED**. Defendants are to file an Answer to SunTrust's Amended Complaint within 10 days of the date of this Order.

Case No. 09-61323-CIV-ALTONAGA/Brown

**DONE AND ORDERED** in Chambers at Miami, Florida, this 11th day of January, 2010.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record